COURT OF PROBATE OF CRANSTON *v.* WILLIAM SPRAGUE.

A bond given for the guardianship of several persons, is a legal bond, and within the statute under which guardianship bonds are required.

In a suit upon a guardianship bond, in which the obligees named are the several members of the Court of Probate at the date of the instrument, and payment is promised to be made "unto the said Court of Probate in their said capacity, or to their successors in office or assigns:" *Held,* (on motion in arrest of judgment) that the suit was rightly brought in the names of the individuals constituting said Court at the commencement of the suit: *Also held,* That it is not necessary that it appear *by the record* that the nominal plaintiffs, or the Court of Probate, assented to or directed the bringing of the suit upon the bond; although *Semble,* That on motion at an early stage of the case, the action would have been dismissed, had the plaintiff been unable to exhibit proof of such assent or direction.

*Semble,* That it is not necessary in any case, that such assent or direction be proved by the records of the Probate Court, as a regular, official act.

As a general rule, a motion in arrest of judgment cannot prevail, if upon the whole record it appear for which party judgment ought to be given: but if, in view of all the facts admitted by the pleadings, and those established by the verdict, the Court cannot determine for which party judgment should be, judgment must be arrested.

A new trial of a case will be granted, when it is apparent that the jury could not, in considering of their verdict, have weighed the evidence submitted, in its relation to the only material question in the issue joined.

THIS was an action brought in the names of the members of the Court of Probate of Cranston at the date of the writ, against the defendant, who, with William Sprague, his father, deceased, was a surety of Amasa

Sprague, also deceased, upon the bond given to said Court on the 21st of October, 1823, pursuant to its decree, appointing him guardian of the persons and estates of four minor children of his sister, the widow of one Obadiah Mathewson. It was entered in the Court of Common Pleas, Dec. term, 1846, when the defendant submitted to judgment without trial, appealing to this Court at its March term, 1847. The plaintiffs declared in debt upon the bond generally, its penal sum being fifteen thousand dollars. The condition of the instrument was as follows :

"The condition of this obligation is such, that if the above bounden Amasa Sprague, who is this day appointed guardian of the persons and estates of George Mathewson, Amey Ann Mathewson, Brockholst Mathewson and Rollin Mathewson, minors under the age of fourteen years, now residing in Cranston aforesaid, children of Obadiah Mathewson deceased, shall and do well and truly perform and discharge the trust and office of guardian of the persons and estates of the said George, Amey Ann, Brockholst and Rollin, as aforesaid, and that in and by all things according to law, and shall render a plain and true account upon oath of said guardianship, and of all and singular such estate as shall come to his hands and possession by virtue hereof, and of the profits and improvements of the same, so far as the law will charge him therewith, to the said Court of Probate or their successors, at such time as the said Court shall direct, or to the said minors, when they shall arrive at the age of twenty-one years respectively, and shall pay and deliver to the said minors, when they shall arrive at the age of twenty-one years respectively, what and so much of the said estate as shall then be remaining in the hands of the said Amasa Sprague,

or otherwise pay and deliver the same property as the said Court or their successors shall lawfully appoint and direct, then the afore written obligation to be void; otherwise to be and remain in full force and virtue."

Upon oyer of this condition, the defendant pleaded that the said Amasa Sprague, after the making of said bond, to wit, on the —— day of ————, did make a plain and true account upon oath of his guardianship, and of all and singular such estate as came to his hands and possession by virtue thereof, and of the profit and improvement of the same, so far as the law would charge him therewith, to the said minors, after they had respectively arrived at the age of twenty-one years, and did then and there pay and deliver to said minors when they had arrived at the age of twenty-one years respectively, what and so much estate as was remaining in the hands of the said Amasa; and that the said Amasa did, after the making of said bond, well and faithfully perform, observe and fulfil all and singular, the other clauses, payments, conditions and agreement, in the condition aforesaid mentioned on his part to be performed, observed and fulfilled, according to the form and effect of said condition. To this plea, the plaintiffs, protesting that the said Amasa hath not performed, &c., any of the covenants, &c., in said bond contained on his part to be performed, and according to the form and effect of said bond, replied, that after the making said bond, and during said Amasa's continuance in said office and trust of guardian of the persons and estates of said minors respectively, to wit, on the 21st day of October, 1823, and on divers other days and times between that day and the date of plaintiffs' writ, said Amasa received divers goods and chattels of great value, to wit, of the value of twen-

ty thousand dollars; the said goods and chattels and monies being the property and estate of the said George, Amey Ann, Brockholst, and Rollin; and yet did not, during his life time, exhibit upon oath or affirmation to the said Court of Probate an inventory of the goods and chattels and monies aforesaid, nor of any other of the real and personal estate of said minors, but hath wholly refused and neglected so to do. To this defendant rejoined, traversing the replication in its literal terms as nearly as might be: and the plaintiffs joined issue.

The cause was continued from term to term till September, 1852, when the defendant's counsel moved that the action be dismissed, 1. Because it nowhere appears upon the record that any person named as creditor, hath not been paid or accounted and settled with, or that any person had any cause of action on said bond. 2. Because it no where appears that the Court of Probate have passed any order or decree directing or authorizing any suit to be brought on the bond, and because it appears by their records that they have not passed any such order or decree a copy whereof is here produced. 3. Because it does not appear on the record whether said action is brought by a creditor of said wards or either of them, or that such creditor hath first had his debt or damages ascertained by a judgment of Court, or that he had made any demand therefor on said guardian: nor does it appear that the said wards, or either of them, have first obtained a decree of the Court of Probate ascertaining the quantum of his part of said estate, and had made a demand therefor upon the guardian: nor was there endorsed upon the writ in said action the name of the person for whose particular use and benefit the suit was brought.

This motion, the Court upon argument overruled, and the cause was continued to the ensuing term, (March, 1853,) when it was tried upon the issue joined, and a verdict in the following words returned by the jury.

"We find that after making said bond, and that during said Amasa's continuance in said office of guardian of the persons and estates of George Mathewson, Amey Ann Mathewson, Brockholst Mathewson, and Rollin Mathewson, the said Amasa did, on the 21st day of October, 1823, and on divers other days and times between that day and the date of the plaintiffs' writ, have and receive goods and chattels and monies of the said George, Amey, Brockholst and Rollin, and that said Amasa did not, during his life time, exhibit upon oath or affirmation to the said Court of Probate an inventory of the goods and chattels and monies, nor of the real and personal estate, of said George, Amey, Brockholst and Rollin."

Before judgment upon this verdict, a motion in arrest was filed, which was heard September term 1853, before Justices Haile, Staples, and Brayton, the Chief Justice having been of counsel for the defendant, not sitting, and continued for advisement until the present term. The grounds of the motion are stated in the Court's opinion.

*Mathewson, Bradley, Ames* and *Carpenter,* for the plaintiffs : citing *Robbins* v. *Hayward,* (16 Mass. 526.) *Coffin* v. *Jones,* (5 Pick. 63.) *Paine* v. *Hapgood,* (13 Pick. 154.) *Paine* v. *Stone,* (10 Pick. 76.) *Paine* v. *Moffitt,* (16 Pick. 153.) *Newcomb* v. *Wing,* (3 Pick. 179.) *Dawes* v. *Boylston,* (9 Mass. 357.) *Selectmen* v. *Boylston,* (4 Mass. 324.) *White* v. *Steenwood,* (4 Pick. 381.) *Tyler* v. *Hand,* (7 Howard's U. S. 573.)

*Potter, Blake, Robinson* and *A. C. Greene* for defendant, citing *Coffin* v. *Jones,* (5 Pick. 61.)   *Rogers* v. *Wendall,* (5 N. H. 69.)   *Stillwell* v. *Mills,* (19 Johnson, 304.)   *Cookin* v. *Hoyt,* (13 N. H. 392.)   *Bailey, Judge* v. *Rogers,* (1 Maine 186.)   *Nelson, J.* v. *Jaques,* (1 Maine 139.)   *Probate Court* v. *Van Duzen,* (13 Verm. 135.)   1 Williams on Exrs. 333, 334, (note.)   *Jones* v. *Anderson,* (4 M'Cord 113.)   *Gordon's Adm'r* v. *The Justices of Frederic,* (1 Mumford, 1.)   *Commonwealth* v. *Hatch,* (5 Mass. 191.)   *Washington* v. *Young,* (10 Wheaton, 406.)

BRAYTON, J.   In considering the various grounds which have been assigned for arresting the judgment in this cause, it may be more convenient, and perhaps be better understood, if we vary somewhat from the order in which they are assigned in the motion in arrest.

The third ground assigned is, that the bond itself is not a legal bond, in this, that the bond was given for the guardianship of the persons and property of *four* individuals.

The defendant's counsel argue that the Court of Probate could not by one and the same decree appoint one individual guardian to several wards; that the person and estate are necessarily individual and separate, the one from the other and not joint.   But if such decree were good, still the bond to be given for the faithful performance of the trust, must relate to the estate of each severally, and there must be a separate bond for the guardianship of each individual: and the counsel suggest difficulty in proceeding either in rendering an inventory or accounting or other proceedings before the Court of Probate, or in a suit upon the bond, if it be joint.

Court of Probate of Cranston *v.* William Sprague.

It is easy to see that many difficulties may arise in taking one bond for the guardianship of several wards, which might be well avoided by giving a separate bond for each ward, and keeping the effects essentially distinct as they are in fact. It would obviate questions as to return of the inventory, which might contain all the property held by the wards jointly, and omit the separate property of some one individual. There may be a breach of the condition as to one and not as to the others, or there may be a breach as to each, but upon different parts of the condition, and where the rule of damages would be different, so that one may have an interest in the bond and another none.

But it is not now necessary to consider any difficulties of this kind. The authorities cited by the plaintiffs' counsel we think settle this point beyond dispute, that a bond given for the guardianship of several wards is a legal bond, and within the statute under which this bond was given. The practice in this respect is general and uniform in all probate courts to take such bonds. The conditions of the bond are in their nature several, and would require a several inventory, a several accounting, and payment over to the wards, as they severally arrived at full age.

The fourth ground assigned for arresting judgment is, that the plaintiffs are not the obligees named in the bond, and the suit should be brought in the name of all the obligees set forth in the bond, or in the names of the survivors, if any be deceased, and in no other manner.

This action is brought in the names of the plaintiffs, who are alleged in the declaration to be the successors in office of the obligees named in the bond. The bond was given to the individuals composing the Court of Pro-

bate at the delivery of the bond, in their capacity as members of the said Court of Probate, and payable to them, their successors and assigns. It is made to the Court of Probate as a quasi corporation. It is sued in the name of their successors in the same office. It is the same court in contemplation of law, as that to which the bond was originally made. If this were not a statute bond, but a voluntary bond only, the defendant's objection might prevail: but being required to be given to the Court of Probate in that capacity, and being so given, this objection fails.

The fifth ground assigned is, that it does not appear upon the record that the parties named as plaintiffs, nor the Court of Probate of Cranston, ever assented to or directed the bringing or maintainance of the suit.

Upon this point the defendant's counsel claimed that it was necessary that it should appear upon the *record* in the suit, that the Court of Probate has given leave to institute the suit upon the bond.

No authority, however, was cited to sustain this point. Certain cases were cited, in which, under similar statutes to our own, it was held necessary in *certain cases*, that the writ should be endorsed with the name of the person for whose use the monies received were to enure, and that in all other cases the assent of the Probate Court must be given. None of these cases, however, hold that such assent must be alleged upon the record.

The only cases which hold it to be necessary that it should appear upon the record, are 5 Shepley, 14 Shepley, and 6 N. H. 292, under statutes *expressly* requiring it, and not by implication.

The objection was taken in a case before Lord Mansfield, *Archbishop of Canterbury* v. *House*, (Cowper, 140,) by a motion to dismiss the suit, because the assent of the ordinary had not been given to the commencement of suit upon an administration bond. It was there treated as a matter open to proof, whether the ordinary had in fact given his assent, and it appearing that he had, the motion was dismissed with costs. It would seem from the statement of the case that this was brought upon the record only by the motion to dismiss.

The defendant's counsel also urged, under this fifth ground, that if it were not necessary to allege it upon the record, still it must be shown in proof, in order to entitle the plaintiff to recover, that such assent had been given. Had this objection been taken when the defendant first appeared to answer this suit, and before any presumption could have arisen from his own acquiescence, it would have been listened to with favor, and under the authority of the cases in Massachusetts, the Court would have required proof of such assent, and for want of it must have dismissed the action as commenced without authority.

But the defendant, instead of moving then to dismiss, or suggesting any want of authority, suffered the case to go on for nearly six years, on the assumption that the plaintiffs were properly here, before any motion or suggestion: and when made it is overruled as too late in the cause. The party should move in some reasonable time, and if he neglects to do so, it is no ground of complaint that the door to inquiry is closed.

The first ground assigned, and the sixth ground assigned by the defendant, as argued by the counsel, are essentially the same.

The first is, that the plaintiffs have no interest in the bond, and are entitled to no portion of the penalty or damages that may be assessed thereon; and it does not appear on the record for whose particular use and benefit the suit was brought: and the sixth is, that the action is not brought according to the provisions of the statute under which it is brought, as appears by the pleadings and record therein.

It is true that the members of the Court of Probate have no interest in the bond, and are not entitled to take to themselves any thing that may be recovered in the suit, either penalty or damages. They are mere trustees, without interest. But the point made by these causes above assigned, (first and sixth,) involves the consideration of what are the necessary requisites to maintain a suit upon a guardianship bond under our statute, and whether those requisites have been complied with in the case before us.

The statute provisions, to be kept in view in this inquiry, are the following, contained in Dig. 1822, p. 237.

SEC. 31. *And be it further enacted,* That when it shall satisfactorily appear, upon a hearing in chancery on an administration bond, for whose particular use and benefit the money for which execution issues is to enure, the judgment shall be rendered, that the plaintiffs, in their said capacity (naming them) now have execution for                being part of the penalty forfeited, and costs taxed at                for the use of                of in the county of                a creditor or heir of           deceased, (as the case may be;) and the person to whose use judgment shall be rendered in the name of the Court of Probate as aforesaid, may sue out execution thereon, and have the same levied according to law; and shall be deemed and taken to be the creditor, to every intent and purpose whatsoever: and when there are several persons to whose use the monies recovered on an administration bond, are to enure, there shall be as many separate and distinct judgments, in form aforesaid.

And as a directory for what sum execution ought to be awarded upon an administration bond, when it shall appear upon confession, verdict, demurrer

or otherwise, that the penalty is forfeited; and also that administration bonds may not upon frivolous pretences be put in suit:

SEC. 32. *Be it further enacted,* That when the suit is instituted at the desire of a creditor of the deceased, such creditor shall first have his debt or damages ascertained by judgment of Court (unless the estate is insolvent) and likewise make it appear that a demand has been made of the administrator therefor, and that the administrator has refused or neglected to satisfy the same, or to shew goods or estate of the deceased for that purpose: when the estate is insolvent, the creditor shall produce a copy of the order of distribution of the estate of the deceased among the creditors, particularly specifying each creditor's claim, and the dividends they are severally entitled to; and that a demand has been made of the administrator for his particular dividend: when an heir has the suit brought for his part of the personal estate, he shall exhibit a copy of the decree of the Probate Court, ascertaining its quantum, and that he has made a demand thereof upon the administrator: and in the preceding instances the writ, in addition to the usual indorsement of the name of the plaintiff or his attorney, shall also have the name of the person or persons for whose particular use and benefit the suit is brought, written thereon; and the party aforesaid shall give security for costs, as provided by law in other cases; and in case the defendant recovers, execution shall issue against such party for the defendant's costs as aforesaid: and if the administrator shall refuse or neglect to account upon oath or affirmation for such property of the intestate as he has received, especially if he has been cited by the Court of Probate for that purpose, execution shall be awarded against him for the full value of the personal property of the deceased that has come to his hands, without any discount, abatement or allowance, for charges and expenses of administration or debts paid: and when it shall appear that the administrator shall have received the personal property of the intestate, and shall not have exhibited upon oath or affirmation a particular inventory thereof, execution shall be awarded against him for the whole penalty of such administration bond, to be distributed amongst the parties interested, agreeably to the directions of law: the like judgment and proceedings (so far as they can with propriety take place) shall be had upon bonds of executors, guardians and others, given to the Probate Courts in their said capacity.

The defendant's counsel contends, that the statute was intended to provide for all cases of suit upon the bond: that the statute was made to prevent suits from being brought upon frivolous pretences, and provides for all cases which could arise: that the suit must be in every case for the use and benefit of a creditor or heir, and the statute provides for them: and, therefore, that in every case the writ must be endorsed with the name of

the person, whether heir or creditor, for whose use the
monies recovered are to enure: that the Court of Pro-
bate, having no interest whatever in the bond or the
condition, could not release it, or the damages for
breach of the condition; but every release must be by
the party in interest; and unless it appeared upon the
record, in case of any such release, it could not be plead-
ed, and made available for his defence.    On the other
hand, the plaintiffs' counsel claim, that by the common
law no such endorsement is required in any case, and it
is only by force of this statute that an endorsement is
required in any case; that this statute does not profess
to provide for all cases, but for certain cases only, which
are specified in the act.

The statute, as it professes, was made for the purpose,
among others, to prevent suits upon frivolous pretences.
It requires certain things to be done in certain cases, as
conditions of maintaining a suit upon the bond, and re-
quires that the writ be endorsed by the party in interest,
and that he give security for costs.    The statute, in
reference to the endorsement, uses the term, "in the
preceding instances" the writ shall be so endorsed.
These terms imply that all cases were not supposed to
be provided for.   It is evident also, that it would be impos-
sible for the party to comply with all these requisites,
in all cases of a breach of the condition of the bond.
For instance, the heir could not, unless the administra-
tor had settled an account, produce any decree ascer-
taining the quantum of his estate.

It certainly was not intended to deny all remedy upon
the bond, unless the party performed what, in the nature
of things, was impossible.   It would be equally impos-

Court of Probate of Cranston *v.* William Sprague.

sible for a creditor, where the estate is insolvent, and the administrator has settled no account, to produce any order of distribution, or one specifying the amount of his dividend; but it is not to be presumed that he was to be without remedy, and especially while, by the very breach of the condition of the bond by the administrator himself, the creditor was disabled to do it. The statute must be held to apply to those cases only where the conduct of the administrator has left it in the power of the party to comply with its conditions.

The Courts of Massachusetts, whose statute of 1788 is similar to ours upon this subject, met with this difficulty in giving a construction to its different provisions; and in view of it, held that such endorsement was not required in any other than the cases specified in the preceding part of that section of the statute, viz., to heirs, whose distribution shall have been ascertained by a decree of the Probate Court to a creditor who had recovered judgment for his debt against the administrator, or in case of an insolvent estate, whose dividend had been ascertained by a decree of distribution; and that if the writ were endorsed according to the statute, the judgment or decree of distribution must be produced to sustain the suit, and if not sustained by such proof, the plaintiff must be non-suited. But they also held, that such endorsement is not necessary in any case where it is not in the power of the heir or creditor to obtain and produce the evidence required in those instances, and still less, where he is disabled by the conduct of the party sued.

But our statutes provide for other suits upon administration bonds, than those mentioned and pointed out in

this particular section, and other than a suit for a debt, or for a distributive share of the personal estate. It provides (Dig. 1822, p. 239, sec. 34) that suit may be brought upon the bond by a creditor, whose debt has not been paid by the administrator, within three years after administration granted, or by an heir of the real estate, or by a devisee whose estate, by the neglect of the administrator to pay the debts, has been subjected to be taken in execution, if they have been damnified thereby. No provision is made for endorsing the writ by the creditor, or heir, or devisee, in these cases.

So the statute respecting guardians (Dig. 1822, p. 247, sec. 5) gives an action upon the guardianship bond to any creditor who may be damnified thereby, in case the guardian neglects to apply the property of the ward to the payment of his debts. In this case, the act provides that the creditor shall give security for costs, by endorsing the writ of a freeholder, or if not, by procuring a freeholder to endorse it.

It was claimed further for the defendant, that if the assent of the Court of Probate was not required to appear upon the record in the suit, yet, that the act of the Court of Probate was an official act, and must be proved by the records of that Court as a regular judicial order.

There is but one case referred to at all indicating any such necessity, while in Jones, appellant, (8 Pick, 121,) the Court held, that a decree of the Judge of Probate authorizing the bond to be sued, could not be appealed from, and that it was not necessary to make a decree, and that if he consent to the suit it is sufficient.

In the case in Cowp. 140, before referred to, Lord Mansfield, though he expressed himself strongly that the pro-

per mode would be to make a regular judicial order, yet allowed proof to be given of the assent of the ordinary, in fact, without requiring a formal decree.

Another ground (the second in order) for arresting the judgment, is, that the issue presented and tried by the jury is an immaterial issue, and does not and cannot establish any liability on the part of the defendant in said action, nor can any judgment be legally rendered thereon.

The counsel for the defendant suggest, that the condition of the bond in this case does not specify the returning of an inventory, as does an administration bond, but that the duty to return such inventory is prescribed by statute as one of the duties to be performed by the guardian, and to be returned within three months: that as no inventory could be made unless property was received by him within three months, there could be no breach of the bond in this respect, or of his duty as guardian, unless property was received by him within that time; inasmuch as the plaintiffs have not alleged in their replication the receipt of any property within that time, but only a receipt during the continuance of his office of guardian, the replication does not assign any breach of the condition of the bond, and so the plaintiff cannot have judgment upon the whole record: and secondly, that the defendant has by answer pleaded performance of the condition, so far as the matters to be performed are specified in the condition, viz: that the guardian fully accounted with the wards respectively, after they respectively came to the age of twenty-one years; and that he paid over and delivered to them all the property remaining in his hands; and this being ad-

mitted by the replication of the plaintiff, it is immaterial whether an inventory was or was not returned to the Court of Probate within three months.

As a general rule, judgment cannot be arrested, if it appears upon the whole record for which party judgment ought to be given. If, on the other hand, taking all the facts admitted by the pleadings, and such as are established by the verdict, the Court cannot determine for which party judgment should be, judgment must be arrested.

In this case, if there were no sufficient breach of the condition assigned by the plaintiff, and it does not otherwise appear that a breach has been committed, the plaintiffs could not have judgment, for without a breach of the bond no judgment can be given.

It was necessary, to constitute a breach of the condition of the bond, that the guardian should have received property of the wards, or some one of them, within three months after the making of the bond, and that he had not rendered an inventory thereof to the Court of Probate, and the replication would have been bad if it did not so allege. The replication, in this case, alleges that property of the wards was received after the making of the bond, and during the continuance in office of the guardian. This is the substance of the replication. The formal statement of time, to wit: on the 21st of October, 1823, was not of the substance of the plea, and did not confine the plaintiffs to proof of receipt of property on that day, or any particular day while the guardian was in office. Under it, they might have proved a receipt of property on any day prior to the date of their writ.

To this replication the defendant might have demurred for its immateriality, and have had judgment, or he might have traversed the receipt of property "in manner and form" as the plaintiffs had alleged, and still have left the time immaterial; and a verdict upon such issue, found in the words of it, would not have shown a breach of the condition, as it would have found only that property was received on some day before the date of the writ.

But then a party may, by subsequent pleading, make that material, which by the prior adverse plea was not so. As a general rule, if a party reply to an insufficient answer, matter which shows that he had no right to maintain his action, although upon a demurrer to the plea he might have had judgment, yet, as by his own reply, he shows that he ought not to have judgment, it cannot be awarded to him, looking at the whole record. There is nothing in the rules of pleading, which prevents the party from making material and putting in issue what was before formal, nor to prevent his being barred by the facts so made material, when found against him. The defendant in this case, instead of demurring to the plea, as not assigning a breach, or traversing generally in manner and form, leaving the time immaterial in the plea, has chosen to put in issue the fact that property was received on the 21st of October, 1823, which, from the pleadings in the cause, appears to have been within three months after the making of the bond declared upon. He might have done the same thing by alleging in his rejoinder that the guardian did not, at any time within three months after the making of the bond, receive any property of the said wards, and in this case have

put in issue the very matter material to the determination of the case.

This is not a case, therefore, of an immaterial issue. As it went to the jury, it was one involving what was material, the receipt of property on a day certain, which was within the three months, and that which was immaterial, was the receipt of property at any time after the expiration of the three months. So much of it as is material, is found against the party moving in arrest.

We find, then, looking at the whole record, that the bond was made by the defendant; that the guardian whose surety he became, performed the condition of the bond in all other respects, fully accounted with the wards after full age, and paid over to them whatsoever was in his hands remaining: but that he did receive property of his wards on the 21st day of October, 1823, the day of the making of the bond, and within three months, and did not, during his continuance in office, render an inventory thereof to the Court of Probate. Can we say, upon these facts, upon the record, that the plaintiffs should not have judgment? or, that we cannot, looking through this record, determine whether he should or not? or, that the material facts in the cause are not determined?

If it was the guardian's duty to return an inventory within three months, upon receiving property within that time, it sufficiently appears that he has failed in the performance of that duty: and, if it fall within the condition of this bond, that the condition has been broken in that regard.

The closing counsel for the defendant more particularly urged that the issue in this case was immaterial

Court of Probate of Cranston *v.* William Sprague.

in another respect. He contended, that the condition of the bond is in the alternative, to render an inventory, *or* to account: and, therefore, it appearing by the pleadings in the case, that the guardian has fully accounted, it was immaterial whether the other alternative, the rendering an inventory, had or had not been performed.

Were the condition of the bond thus in the alternative, and the bond to become void if he rendered the inventory within the time limited, or should fully account, the conclusion to which the counsel would come would necessarily follow: for in that case, upon the whole record, it would appear that the guardian had fully performed. But as he has set forth the condition, it is not thus alternative: but is, well and truly to perform and discharge the trust and office of guardian of the persons and estates of the wards, and that in and by all things according to law; and shall account with the Court of Probate when required by them, *or* account with the wards after full age, *and* deliver to said minors what shall remain in his hands, *or* otherwise pay and deliver it as said Court shall direct. There is no such alternative in the condition, as that of returning an inventory or rendering an account. It is well and truly to perform and discharge the trust, and *also* to account, either with the Court, if required by them, or with the wards after full age. These are both to be performed, as well the accounting, as the performance of the trust of guardian. Unless, therefore, the performance of one condition is an excuse for the breach of another, we cannot look back to see if the performance of such condition has been admitted or denied.

We do not find any sufficient reason assigned, for arresting the judgment in this case.

A motion for a new trial, filed by the defendant in this cause, was also heard at the September term, 1853, and continued for advisement until the present term. The grounds of the motion, so far as considered by the Court, are stated in its opinion.

BRAYTON, J.—The defendant, by his counsel, has also moved for a new trial in this cause, and for reason therefor, among others, says " that the verdict is against the legal evidence in said cause, there being no legal evidence proving the issue joined by the pleadings."

The issue joined by the pleadings was, whether the guardian did, after the making of the bond and during his continuance in office, to wit: on the 21st day of October, 1823, and on divers other days and times between that day and the date of the plaintiffs' writ, have and receive goods, chattels and monies of the wards, and failed during his life-time to exhibit an inventory thereof to the Court of Probate. Upon this issue the jury returned their verdict, that the guardian did receive property of the wards on the 21st day of October, 1823, and on divers days and times after the making of the bond, and before the date of the writ, and that he did not return any inventory thereof to the Court of Probate.

The only material matter of the issue was, whether the guardian received property on the 21st of October, 1823, as it is the only material matter of the verdict which the jury have returned.

The evidence submitted in proof upon the trial of the issue was, that Obadiah Mathewson, the father of the wards, died at Baltimore, in the year 1822: that ad-

Court of Probate of Cranston *v.* William Sprague.

ministration was committed by the Orphans' Court, in Baltimore, to Susannah Mathewson, his widow, who gave bond in the sum of $15,000 : that she exhibited an inventory of the estate of said deceased on the 7th of May, 1822, amounting to the sum of $978 10, and it was admitted that she never settled her account as Administratrix, with said Orphans' Court, or with the heirs of the said Obadiah : that at the time of the said Obadiah's decease, there was a co-partnership existing between him and his brother, Asahel Mathewson, and upon the dissolution of that firm by the decease of said Obadiah, Asahel Mathewson entered into co-partnership with the said Amasa Sprague, the guardian, which partnership continued till the decease of the said Asahel, in 1825, and that the said Amasa Sprague received the books, property and effects of the firm as surviving partner : that taxes were assessed by the assessors of taxes in Cranston to the said Amasa Sprague, for the property of these wards, in the year 1829, which taxes were paid by him, and taxes continued to be thus assessed and paid till the year 1841.

We think the jury could not have weighed the evidence in reference to the only material question in the issue joined, viz : the receipt of property on the 21st day of October, 1823, the date of the bond, and must have considered it with reference only to the fact whether he received property at all during his life, and while guardian, and irrespective of the time when it was received.

*New trial granted.*